**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | NO.  06-205-7 & 06-207-5 |
| **MICHAEL CLARK** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                              **August 24, 2021**

Michael Clark plead guilty to conspiracy to distribute fifty or more grams of crack cocaine in exchange for the United States dismissing the remaining charges. Mr. Clark told Judge Padova he voluntarily and expressly waived all rights to appeal or collaterally attack his sentence, including the terms of supervised release. Following a comprehensive presentence investigation report, Judge Stengel sentenced Mr. Clark at a range significantly below the recommended prison sentence but imposed the mandatory minimum of ten years of supervised release. Mr. Clark and his counsel did not oppose the pretrial officer's confirmed mandated ten-year term of supervised release. Mr. Clark did not appeal the sentence, nor did he challenge the effectiveness of his counsel. The United States did not appeal the sentence. Judge Stengel did not sentence above the guidelines or the Congressional mandate. Mr. Clark served his time in prison and has now completed six years of his ten years of supervised release.

He presently seeks to terminate his supervised release citing good conduct and rehabilitative efforts. We commend him. Congress defined the ten years of supervised release as mandatory at the time of sentencing. Mr. Clark waived his right to challenge the minimum mandatory term of supervised release. He did so knowingly and voluntarily after an extensive plea colloquy and following Judge Stengel's sentence. We must deny his pro se request for early

termination of his supervised release as he knowingly and voluntarily waived this argument and there is no injustice in enforcing the terms of his plea agreement.

## I. Background

Our Grand Jury returned a thirty-three-count indictment against nine defendants in May 2009 for crimes related to a conspiracy to distribute crack cocaine.[1]  The Grand Jury charged Michael Clark with one count of conspiracy and seven counts of unlawful use of a communication facility.[2]  Mr. Clark entered a plea agreement with the United States to plead guilty to conspiracy to distribute fifty or more grams of crack cocaine.  In exchange, the United States agreed to drop the remaining charges.

Mr. Clark signed his plea agreement and confirmed he voluntarily and expressly waived "all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." [3]

The waiver contained exceptions allowing Mr. Clark to appeal or collaterally attack his sentence if:  (1) the United States appealed his sentence; (2) his sentence exceeded the statutory maximum; (3) Judge Stengel erroneously departed upward; or (4) Judge Stengel imposed an unreasonable sentence above the final Sentencing Guideline range.[4]

At the guilty plea colloquy, Judge Padova asked Mr. Clark whether he understood, "by pleading guilty, you are giving up your right to appeal from any conviction after a trial, because there won't be a trial."[5]  Judge Padova explained, "[o]rdinarily, the only appeal that you would have from a guilty plea would be if I imposed an illegal sentence or if there are any errors in this proceeding or the sentencing proceeding."[6]  He further explained, "you may have further limited

your appellate review rights by the plea agreement that you signed, do you understand that?" Mr. Clark confirmed he understood.[7]

Judge Padova also described the potential sentence Mr. Clark faced. He explained, "what you face in this case by way of the maximum sentence and mandatory minimum is mandatory life imprisonment without release, an $8 million fine and a special assessment of $100.00."[8] Mr. Clark confirmed he understood.[9] Judge Padova also explained, "[i]f you are sent to prison and you're released from prison, a term[] of supervised release will be imposed from prison" and asked whether Mr. Clark understood.[10] Mr. Clark confirmed he understood.[11] Judge Padova further explained "on the basis of the guilty plea, you may receive a sentence up to the maximum permitted by law and the Court may be required to impose a mandatory minimum sentence required by law"[12] and asked whether Mr. Clark understood. Mr. Clark again confirmed he understood.[13] Judge Padova also questioned Mr. Clark on whether he made his plea knowingly, intelligently, and voluntarily.[14] Satisfied with Mr. Clark's answers, Judge Padova entered the guilty plea.[15]

Pretrial services prepared a Presentencing Report in advance of Mr. Clark's sentencing in front of Judge Stengel. Based on Mr. Clark's offense level and criminal history, the pretrial services officer reported, "the guideline range for imprisonment is 262 to 327 months" but due to mandatory minimums implicated in his sentence "the range becomes life."[16] The officer also addressed supervised release. Based on the applicable statute, the Presentence Report confirmed, "[s]hould the defendant be released from prison, a term of at least 10 years supervised release is required if a sentence of imprisonment is imposed."[17] Based on the Sentencing Guidelines, the Presentence Report stated, "[s]hould the defendant be released from prison, the guideline term of supervised release is at least 10 years."[18]

3

Judge Stengel held Mr. Clark's sentencing hearing on August 21, 2008.[19] Judge Stengel confirmed Mr. Clark faced a mandatory sentence of life imprisonment "because of [his] two prior felony drug convictions."[20] Judge Stengel then considered and granted the United States' motion for a downward departure under 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e).[21] Following a review of the Presentence Report, testimony presented, and letters submitted at the hearing and in consideration of the Section 3553(a) factors, Judge Stengel sentenced Mr. Clark to ninety-six months (eight years) imprisonment, followed by the mandatory ten years of supervised release.[22] Mr. Clark and his counsel did not ask questions about the sentence. Mr. Clark did not appeal the sentence.

Mr. Clark served his prison term and served six years of his ten-year term of supervised release. Mr. Clark's conditions of supervised release include refraining from drug possession and use, undergoing mental health treatment, paying the United States $25.00 per month, and maintaining at least part-time employment.

Mr. Clark represents he has turned his life around since his release from prison. He tells us the time spent in prison away from his children "was truly an eye-opener."[23] He informs us he "is not the same person" he was before he entered prison and he no longer "hang[s] around the people [he] used to deal with."[24] The United States offers no basis for us to doubt Mr. Clark's representations and concedes Mr. Clark's term of supervised release has been "uneventful."[25]

**II.    Analysis**

Mr. Clark now asks we terminate supervised release four years early, arguing his good behavior warrants terminating supervised release. The United States opposes, arguing the appellate waiver in Mr. Clark's plea agreement bars Mr. Clark from challenging his sentence and Mr. Clark has not otherwise demonstrated entitlement to early termination. While we applaud Mr.

Clark's rehabilitation and hope for his continued success in the future, we agree with the United States. Mr. Clark waived the right to challenge the mandatory ten-year term of supervised release in his plea and confirmed the same during his sentencing hearing.

Our Court of Appeals directs us to enforce an appellate waiver in a plea agreement "only 'if we conclude (1) that the issues [a defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice.'"[26] We find Mr. Clark's petition falls within the scope of the appellate waiver, and we further find enforcing the appellate waiver would not result in a miscarriage of justice.

Mr. Clark's motion falls within the scope of the appellate waiver.[27] In *United States v. Oyerinde*, our Court of Appeals reviewed Judge Pappert's order denying early termination of supervised release to a petitioner whose plea agreement contained an identical appellate waiver to the one contained in Mr. Clark's plea agreement.[28] Like Mr. Clark's appellate waiver, the appellate waiver in *Oyerinde* provided:

> [T]he defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.[29]

On appeal, the United States invoked the appellate waiver for the first time, and the petitioner argued the appeal fell outside the scope of the waiver since he did not appeal or collaterally attack under one of the identified statutes. Our Court of Appeals rejected the petitioner's argument explaining, "[a]t its core, Defendant's motion for early termination of supervised release challenged his original sentence by seeking to shorten the term of his supervised release."[30] The Court of Appeals held, "Defendant's appeal from the denial of the motion for early termination of supervised release likewise implicates his sentence," and it granted the United

States' "motion to enforce the appellate waiver because Defendant's challenge to his supervised release term falls within the scope of the appellate waiver."[31]

We recognize the procedural posture in *Oyerinde* differs from Mr. Clark's present status. But this difference does not change our analysis for two reasons. First, our Court of Appeals' reasoning for applying the appellate waiver stemmed from the "Defendant's motion for early termination of supervised release" constituted a "challenge[] to his original sentence." Our Court of Appeals did not premise its decision on the case's posture as an appeal. [32] Second, the court implied the United States could have presented the appellate waiver argument to Judge Pappert when opposing the defendant's motion, but may have chosen not to because it believed it could defeat the defendant's motion on the merits.[33]

Consistent with our Court of Appeals' decision in *Oyerinde*, we find the identical appellate waiver provision in Mr. Clark's plea agreement bars his petition.[34]

Mr. Clark knowingly and voluntarily agreed to the appellate waiver. Judge Padova reviewed Mr. Clark's plea agreement with him during his plea colloquy. He explained to Mr. Clark he faced life imprisonment and, if imprisoned for less than his lifetime, would have to serve a term of supervised release. He also explained to Mr. Clark the plea agreement waived his rights to appeal his sentence. Mr. Clark confirmed he understood these terms. Judge Padova also asked Mr. Clark several questions about whether his plea was knowing and voluntary, and Mr. Clark answered these questions to Judge Padova's satisfaction. Mr. Clark does not offer a basis for us to question the voluntariness of his plea, and we do not find any from our review of the record.

Enforcing the appellate waiver does not work a miscarriage of justice. Our Court of Appeals instructs, "the term 'miscarriage of justice' is more a concept than a constant."[35] Our Court of Appeals still directs us to consider several factors in determining whether enforcing a

waiver would work a miscarriage of justice, including: "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."[36]  Our Court of Appeals cautions us to apply the miscarriage of justice exception "sparingly and without undue generosity."[37]

Mr. Clark does not claim error in Judge Stengel's sentence.  He does not demonstrate how the terms of supervised release have negatively interfered with his life.  Mr. Clark instead acknowledges the mental health treatment he receives as a condition of his supervised release "helps a lot" with his depression and anger.  We do not find enforcing the appellate waiver to work a miscarriage of justice.

## III.    Conclusion

We commend Mr. Clark's work during his supervised release.  But we have no grounds to terminate his supervised release four years early.  Mr. Clark knowingly and voluntarily agreed to waive his right to challenge the ten-year term of supervised release.  We find no miscarriage of justice in enforcing his waiver.  We must deny his motion for early termination.

---

[1] ECF Doc. No. 31.

[2] *Id.* at 2, 23, 26, 27, 30, 34, 37, 40.

[3] Plea Agreement ¶ 10.

[4] *Id.*

[5] ECF Doc. No. 413 at 13:3-10.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 18:23-19:1.

7

[9] *Id.* at 19:2.

[10] *Id.* at 19:23-25.

[11] *Id.* at 20:2.

[12] *Id.* at 20:3-6.

[13] *Id.* at 20:7.

[14] ECF Doc. No. 413 at 8:1-11.

[15] *Id.* at 24:25-25:3.

[16] Presentence Report ¶ 25.

[17] *Id.*

[18] *Id.*

[19] ECF Doc. Nos. 415, 622.

[20] *Id.* at 5:8-14.

[21] *Id.* at 5:17-20, 10:23-11:1, 12:17-20.

[22] *Id.* at 41:23-25-42:1-3, 44:14-16.

[23] ECF Doc. No. 408.

[24] *Id.*

[25] ECF Doc. No. 414 at 11.

[26] *United States v. Damon*, 933 F.3d 269, 272 (3d Cir. 2019) (quoting *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008)).

[27] Mr. Clark does not argue exceptions to the waiver apply, and we find none from our review. The United States did not appeal. Judge Stengel's sentence fell far below the statutory and sentencing guidelines. Judge Stengel imposed the minimum mandatory term of supervised release.

[28] 784 Fed. App'x 111 (2019).

[29] *Id.* at 111-12.

[30] *Id.*

[31] *Id.*

---

[32] *Cf. United States v. Mabry*, No. 19-604, 2021 WL 1111166 (E.D. Pa. Mar. 23, 2021) (distinguishing our decision in *United States v. Ball*, No. 05-56-10, 2021 WL 51461 (E.D. Pa. Jan. 6, 2021) and finding *Oyerinde* "premised on the basis that the action was an appeal, not a collateral attack.").

[33] *See id*. at 113 n.12 ("The Government's decision not to invoke the waiver before the District Court could be explained by a view that the Government decided that the best way to proceed before the District Court was to address the merits. This, however, should not preclude them from relying on the appellate waiver to bar further review.")

[34] We are also mindful of the *Crews* decision in this District finding the appellate waiver identical to the provision at issue here and in *Oyerinde* "does not constitute an appeal or collateral attack of [the petitioner's] sentence, which would be covered by the appellate waiver and, accordingly, we conclude that [the petitioner] did not waive his right to bring the instant Motion in his Guilty Plea agreement." *United States v. Crews*, No. 10-663-5, 2020 WL 6581430 (E.D. Pa. Nov. 10, 2020). In reaching this conclusion, our colleague Judge Padova distinguished our Court of Appeals' opinions in *United States v. Goodson*, 544 F.3d, 529 (3d Cir. 2008) and *United States v. Laine*, 404 F. App'x 571 (3d Cir. 2010), but did not address the Court's 2019 decision in *Oyerinde*. We respectfully disagree with the holding in *Crews* in light of the later reasoning in *Oyerinde*, as the nature of a motion to terminate supervised release is an attempt to change or alter a sentence. Mr. Clark is asking us to change his sentence. He waived this right absent the United States' consent.

We are also mindful of the *Mabry* decision in this District distinguishing *Oyerinde*. 2021 WL 1111166. The language of the waiver provision in *Mabry* differed substantially from the waiver provision here and in *Oyerinde*:

> The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the conviction and sentence imposed. Acknowledging all of this, the defendant knowingly waives any right to appeal any conviction and sentence, including a sentence imposed within the statutory maximum, on any and all grounds set forth in Title 18, United States Code, Section 3742, or any other grounds constitutional or non-constitutional, including the manner in which that sentence was determined in light of *Blakely v. Washington* [542 U.S. 296], 124 S. Ct. 2531 [159 L.Ed.2d 403] (June 24, 2004) [and *United States v. Booker* and *Fan Fan* [543 U.S. 220], 128 [125] S. Ct. 738 [160 L.Ed.2d 621] (2005)]. The defendant also waives the defendant's right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The defendant further acknowledges that this appeal waiver is binding only upon the defendant, and that the United States retains its right to appeal in this case. *Id.* at *2.

We find no basis to following the *Mabry* reasoning when applying a much different waiver.

[35] *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)).

[36] *Id.* (quoting *Teeter*, 257 F.3d at 26).

[37] *Id.* (quoting *Teeter*, 257 F.3d at 26).